IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN J. HAMDORF

    **Plaintiff,**

    v.

UNITED HEALTHCARE SERVICES, INC., et al.,

    **Defendants.**

Case No. 2:23-mc-00215-HLT

**MEMORANDUM AND ORDER**

This action was initiated by Jonathan Hamdorf on a motion to vacate an arbitration award. Doc. 1. The underlying arbitration award was an interim award granting preliminary injunctive relief. Hamdorf argues the interim award should be vacated because the arbitrator exceeded her authority. United Healthcare Services and UnitedHealth Group Incorporated (collectively, "United") are the other parties to the arbitration. They oppose Hamdorf's motion to vacate and have also filed a motion to confirm the arbitration award and for attorneys' fees. Doc. 10.

The Court finds that Hamdorf has waived arguments that there is no arbitration agreement or that the arbitrator could not decide issues of arbitrability. He also has not shown that the arbitrator's substantive decision on arbitrability exceeded the scope of her authority. The motion to vacate is therefore denied.[1]

---

[1] United filed a motion seeking expedited argument on the same day the motions became ripe. Doc. 22. The motion notes that Hamdorf is currently prevented from working on a proposal for a Medicaid contract for his new employer, which is United's competitor. *Id.* at 1-2. The deadline for that proposal is January 4. *Id.* at 2. United argues that a ruling either vacating or confirming the interim arbitration award is "time sensitive, at a minimum, to maintain the status quo created by the Arbitration Award" and that United needs "adequate time to ensure compliance by Plaintiff and no interference by his employer and ensure adequate time to seek emergency relief if United does not receive adequate assurances as to compliance and no interference." *Id.* The Court notes that neither party indicated any need for expedited relief in initiating this matter or filing the substantive briefs. Nor is it clear why United needs expedited relief given that it has already been granted the relief it seeks in the interim arbitration award and there is no indication Hamdorf is not complying with that directive. Hamdorf responds to the motion to

United's cross-motion to confirm the interim arbitration award is denied without prejudice. Neither side discusses whether the Court can confirm the interim award in this case. However, United may file a new motion to confirm as discussed below within two weeks of this order. Otherwise, this miscellaneous case will be closed.

I.  **BACKGROUND**

United previously employed Hamdorf. In 2020, Hamdorf signed United's Employment Arbitration Policy ("Arbitration Agreement"). *See* Doc. 3-4. The Arbitration Agreement states that arbitration is the exclusive forum for disputes arising out or relating to Hamdorf's employment with United. *Id.* at 3. It listed examples of covered claims, including claims regarding unfair competition and trade secrets, claims derived from the employment relationship, and "claims for breach of any contract or covenant (express or implied)." *Id.* It also stated that the policy covered claims regarding "any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability, waiver, or formation . . . ." *Id.* at 4. The Arbitration Agreement states it will be administered "in accordance with the then-current Employment Arbitration Rules of the AAA." *Id*.

In 2021 and 2022, Hamdorf and United entered some Nonqualified Stock Option Awards ("Stock Agreements"). The Stock Agreements included various restrictive covenants. *See, e.g.*, Doc. 3-6 at 6-8. They also stated:

> Participant [Hamdorf] consents to the law of Minnesota exclusively being applied to any matter arising out of or relating to this Award certificate, without regard to its conflict of law principles, and exclusively to personal and subject matter jurisdiction in the state

---

expedite, agreeing that he "shares the sense of urgency expressed" by United, but he does not elaborate why. Doc. 23. The Court has endeavored to rule on the underlying motions in a reasonable time and does so through entry of this order. But neither party has justified a need for expedited relief, and the Court does not find that oral argument is warranted. Therefore, the motion for expedited argument is denied. A motion to seal is also pending, and the Court will rule on that motion separately.

2

and federal courts of Minnesota for any dispute relating to this Award certificate or Participant's relationship with the Company.

*Id.* at 14.

Hamdorf subsequently left United, went to work for a company United considers a competitor, and United considers him in violation of the restrictive covenants. *See generally* Doc. 3-9. United initiated an arbitration proceeding against Hamdorf on May 1, 2023. Doc. 2 at 4. United also moved for interim relief, including a preliminary injunction. *Id.* Hamdorf moved in the arbitration to strike the request for interim/injunctive relief. Doc. 12-4. The motion acknowledged that the arbitration was being conducted pursuant to the Arbitration Agreement. *Id.* at 3 n.1 ("This arbitration is conducted pursuant to United's Employment Arbitration Policy that was signed by Hamdorf on July 5, 2020."). But Hamdorf argued that the Arbitration Agreement did not authorize the arbitrator to issue the interim or injunctive relief that United sought. *Id.* at 8.

Hamdorf's motion to strike also briefly stated that the claims arising under the Stock Agreements were not subject to the Arbitration Agreement, though a footnote suggested the argument was only "for purposes of preservation and to avoid waiver," and that Hamdorf reserved the right to later move to dismiss the arbitration. *Id.* at 5 n.3.

The arbitrator subsequently asked Hamdorf to elaborate on his argument that claims arising under the Stock Agreements were not covered by the Arbitration Agreement. *See* Doc. 12-2 at 2. In the supplement to his motion to strike Hamdorf stated:

> Hamdorf does not dispute that the Arbitration Agreement [is] a valid and enforceable agreement between him and United. The Arbitration Agreement expressly vests the arbitrator with authority to decide "disputes regarding the [Arbitration Agreement] or any portion of the [Arbitration Agreement] or its interpretation, enforceability, applicability, unconscionability, arbitrability, waiver, or formation . . . ."

3

*Id.* at 2-3. Hamdorf went on to argue that "[a]lthough the Arbitration Agreement contemplates the parties arbitrating claims 'which arise out of or relate to' Hamdorf's employment, it does not permit the claims made in this arbitration to be arbitrated." *Id.* at 3-4. This was because the claims in the arbitration arose out of the Stock Agreements, and the Stock Agreements contain provisions under which the parties "<u>explicitly</u> and <u>unequivocally</u> contracted to <u>litigate</u> all such claims in, <u>and only in</u>, federal or state courts in Minnesota." *Id.* at 4 (footnote omitted; emphasis in original). In other words, Hamdorf argued that though the parties "agreed to arbitrate a panoply of claims in the Arbitration Agreement," claims regarding the Stock Agreements were not "among the claims the parties have agreed to arbitrate." *Id.* Hamdorf thus requested "that this arbitration be dismissed because the claims brought by United are not arbitrable under the parties' Arbitration Agreement." *Id.* at 5.

The arbitrator issued an order on the motion to strike. Doc. 3-8. The order stated that the "parties agree that, on July 5, 2020, they entered into a binding agreement to arbitrate" claims arising out of or relating to Hamdorf's employment with United. *Id.* at 3. It included "claims for breach of any contract or covenant (express or implied)." *Id.* She found that "the claims asserted in this arbitration (for breach of restrictive covenants arising under the Stock Agreements) fall under the broad scope of claims covered by the Arbitration Agreement." *Id.*

She also addressed Hamdorf's argument that the claims were outside the scope of the Arbitration Agreement because they arose under the Stock Agreements, which included the choice-of-law provision. The arbitrator rejected Hamdorf's argument that the provisions in the Stock Agreements overrode or superseded the agreement to arbitrate and rejected his argument that the choice-of-law provision in the Stock Agreements was inconsistent with the Arbitration

4

Agreement. *Id.* at 2-4. She also found that the Arbitration Agreement authorized interim and injunctive relief. *Id.* at 4-5.

After an evidentiary hearing on August 1, 2023, the arbitrator issued an order that granted United interim injunctive relief against Hamdorf. *See generally* Doc. 3-9. Hamdorf filed this action in federal court to vacate the interim arbitration award. Doc. 1. He argues the arbitrator exceeded her powers under 9 U.S.C. § 10(a)(4) by finding the claims were arbitrable. United opposes Hamdorf's motion to vacate and has moved to confirm the interim award. Doc. 10.

**II.    STANDARD**

Review of an arbitration decision is "among the narrowest known to the law." *Abbott v. L. Off. of Patrick J. Mulligan*, 440 F. App'x 612, 617 (10th Cir. 2011) (internal quotation omitted). "The burden is on the party seeking to vacate an arbitration award" and is "very great." *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008). Section 10(a)(4) of the Federal Arbitration Act allows a court to vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "A party seeking relief under this provision bears the heavy burden of demonstrating that the arbitrator's award simply reflects his own notions of economic justice rather than drawing its essence from the contract." *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1190 (10th Cir. 2021) (internal quotation and citation omitted). "As long as the arbitrator's decision is even arguably construing or applying the contract, it will not be overturned even where the arbitrator committed a serious error." *Id.* (internal quotation and citation omitted).

### III. ANALYSIS

#### A. Hamdorf has waived any argument that there is no arbitration agreement in existence.

Hamdorf argues that the arbitrator exceeded her authority by deciding whether there is an arbitration agreement that governs this dispute because that is a question for a court. Doc. 2 at 7. Hamdorf sometimes phrases this issue as whether the Stock Agreements override, revoke, or supersede the Arbitration Agreement <u>altogether</u>, meaning that the Arbitration Agreement is <u>no longer in effect</u>. *See id.* at 7-11. But he also phrases this issue as whether the Stock Agreements supersede or revoke the Arbitration Agreement <u>only as to certain claims and disputes</u>, meaning the parties have agreed to arbitrate some disputes but not the disputes in this case. *See id.*

Importantly, these are two different issues that require a different analysis. The first challenges whether any arbitration agreement still <u>exists</u> between the parties, i.e. whether the parties should even be in arbitration. The second addresses the <u>scope</u> of any such arbitration agreement, i.e. whether it applies to specific claims or disputes. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 720 (Tex. 2023) ("This is a two-step process, requiring the party to first establish the existence of an arbitration agreement and then establish that the arbitration agreement covers the claims asserted." (internal quotation and citation omitted)); *see also Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022), *cert. granted sub nom. Coinbase, Inc v. Suski*, 2023 WL 7266998 (U.S. Nov. 3, 2023) ("The 'scope' of an arbitration clause concerns how widely it applies, not whether it has been superseded by a subsequent agreement.").

It is important to distinguish between which of these challenges is at issue because it impacts who decides it, i.e. a court or an arbitrator. Courts decide whether an arbitration agreement exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). But if an

6

arbitration agreement exists, and it includes a delegation provision, then courts must let the arbitrator decide questions of scope. *See id.*[2] This distinction is relevant here because Hamdorf argues the arbitrator exceeded her authority by deciding a question that a court is supposed to decide.

Therefore, the Court's first task is deciding which challenge is really at issue: the <u>existence</u> of an arbitration agreement between Hamdorf and United, or the <u>scope</u> of any such agreement? The answer is found in Hamdorf's own words to the arbitrator: "Hamdorf does not dispute that the Arbitration Agreement [is] a valid and enforceable agreement between him and United." Doc. 12-2 at 2. This statement concedes that an agreement to arbitrate <u>exists</u> between Hamdorf and United. To the extent Hamdorf now argues otherwise, he has waived that argument by conceding the point at arbitration. *See Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1150 (10th Cir. 2007) ("Because Lewis never adequately objected in arbitration to the arbitrability of his claims or raised a question as to the validity of the arbitration agreement, he waived his opportunity to do so and is estopped from raising such issues now.").

Hamdorf maintains that he did raise objections on this point to the arbitrator. Doc. 18 at 1-3. He argues he "could not have waived the issue of arbitrability" because he argued "that there was no arbitration agreement in existence between Hamdorf and United <u>that covered the Stock Agreements</u>." *Id.* at 3 (emphasis added). This refers to the motion to strike Hamdorf filed in the arbitration. But that was a challenge to the <u>scope</u> of the Arbitration Agreement, i.e. that it didn't cover certain claims, not a challenge to its existence. *See Smith v. Experian Info. Sols., Inc.*, 2023 WL 6057377, at *3 (D.N.J. 2023) (explaining that whether an arbitration clause applies to a particular claim "is an issue of scope").

---

[2] As noted in the background and as discussed below, there is such a delegation clause in this case.

Although Hamdorf made certain arguments on the scope of the Arbitration Agreement, the existence of an agreement to arbitrate between Hamdorf and United was never at issue and was in fact conceded. This dooms his motion to vacate to the extent he argues that it was for a court to decide if an arbitration agreement existed. In other words, Hamdorf maintains the arbitrator exceeded her authority by finding an agreement to arbitrate existed because that is an issue for a court to decide.[3,4] But the arbitrator was never asked to decide that question because the parties both agreed an agreement to arbitrate existed. The Court cannot find that the arbitrator exceeded her authority by deciding a question that was never presented to her and was in fact conceded.

### B. Hamdorf has waived the argument that the Stock Agreement erodes the delegation of arbitrability to the arbitrator.[5]

Hamdorf next argues that the Stock Agreement's choice-of-law provision demonstrates that the parties did not clearly and unmistakably delegate questions of arbitrability to the arbitrator.

---

[3] Hamdorf's reliance on *Field Intelligence Inc. v. Xylem Dewatering Solutions Inc.*, 49 F.4th 351 (3d Cir. 2022), is misplaced. In *Field Intelligence*, the question was "whether, by the later contract, the parties intended to extinguish their prior agreement and litigate any disputes between them moving forward." *Id.* at 356. "Put another way, if Field Intelligence is correct that the 2017 contract superseded the 2013 agreement, then there is no arbitration agreement for us to enforce." *Id.* (emphasis added). Because this went to the question of whether an arbitration agreement exists, it was an issue for a court to decide. *Id.* at 358 ("Like a formation dispute, Field Intelligence's supersession challenge places the parties' mutual assent directly at issue. . . . A court should rule on that issue before referring a case to arbitration."); *see also Suski*, 55 F.4th at 1230 ("The district court therefore correctly ruled that the issue of whether the forum selection clause in the Sweepstakes' Official Rules superseded the arbitration clause in the User Agreement was not delegated to the arbitrator, but rather was for the court to decide."). *Field Intelligence* is not appliable because Hamdorf admits an arbitration agreement exists. *See Smith*, 2023 WL 6057377, at *3 n.3 (noting that *Field Intelligence* applies "when such a decision would lead to a determination that absolutely no valid arbitration agreement exists, as opposed to a decision that would anyway result in referring a case to arbitration for a determination of scope").

[4] The Supreme Court granted certiorari in *Suski* on November 3, 2023, to decide whether an arbitrator or a court decides whether an arbitration agreement is narrowed by a later contract that is silent as to arbitration and delegation. *See* 2023 WL 7266998, at *1. This would also seem to impact *Field Intelligence*. The parties have not briefed the impact of that ruling or discussed any relevant split of authority on this issue. Regardless, the Court does not need to weigh in on this particular question. Because the Court finds that Hamdorf has agreed an arbitration agreement exists, the Court instead relies on existing authority to find that questions of scope were properly decided by the arbitrator in this case. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

[5] As used in this order, "arbitrability" refers to questions of the scope of an arbitration agreement.

Doc. 2 at 11-12. Just as parties can agree to arbitrate, they may also agree to have an arbitrator decide questions of arbitrability. *Rent-A-Ctr.*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). "[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530.

Here, the Arbitration Agreement explicitly delegates to the arbitrator "any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability, waiver, or formation." Doc. 3-4 at 4. It also incorporates the AAA rules. *Id.* Incorporating AAA rules into an arbitration agreement is "clear and unmistakable evidence of an agreement to arbitrate arbitrability." *Goldgroup Res., Inc.*, 994 F.3d at 1191 (internal quotation and citation omitted).

Hamdorf acknowledges the Arbitration Agreement delegates questions of arbitrability to the arbitrator. Doc. 2 at 8 ("It is also true that this Circuit (like all others) has found that reference to AAA rules in an arbitration policy (as in the Arbitration Policy here) is sufficient evidence of such intent."). But he argues that the Stock Agreement's choice-of-law provision "signals a clear intent that the Parties did not agree . . . that an arbitrator would decide issues of arbitrability." *Id.* at 11.

The problem with this argument again falls on Hamdorf's actions during arbitration. Hamdorf did object to certain claims being arbitrable. But in his supplemental motion to strike, Hamdorf clearly acknowledged that "[t]he Arbitration Agreement expressly vests the arbitrator with authority to decide 'disputes regarding the [Arbitration Agreement] or any portion of the [Arbitration Agreement] or its interpretation, enforceability, applicability, unconscionability,

9

arbitrability, waiver, or formation . . . .'" Doc. 12-2 at 2-3. In other words, although he challenged the arbitrability of certain substantive issues in the case, he did not challenge—and to the contrary, consented to—the arbitrator's <u>authority</u> to decide those issues. "[A] party that agrees to submit the question of arbitrability to the arbitrator waives any right to object later to that arbitrator's authority." *Baer v. Terminix Int'l Co.*, 975 F. Supp. 1272, 1279 (D. Kan. 1997); *see also Kalmar Indus. USA LLC v. Int'l Bhd. of Teamsters Loc. 838*, 452 F. Supp. 2d 1154, 1160 (D. Kan. 2006). Because Hamdorf conceded the arbitrator's authority to decide questions of arbitrability, he has waived his current arguments to the contrary.[6]

**C.   Hamdorf has not demonstrated that the arbitrator's rulings on arbitrability exceeded her authority.**

Hamdorf's final argument is that the arbitrator "exceeded her authority by issuing a type of award that was not contained within the parameters of the Arbitration Policy," specifically by granting interim relief. Doc. 2 at 13. This is a challenge to the arbitrability determination by the arbitrator that she had authority to issue preliminary injunctive relief. *See* Doc. 3-8 at 4-6. It is premised on the following provision in the Arbitration Agreement:

> [T]his Policy does not preclude any party from seeking a temporary restraining order or materially identical emergency relief ("temporary restraining order") in a court of law in accordance with applicable law, and any such application shall not be deemed incompatible with or a waiver of this agreement to arbitrate. The court to which such application is made is authorized to consider the merits of the arbitrable controversy to the extent it deems necessary in making its ruling related to the temporary restraining order, but only to the extent permitted by applicable law. The court shall have no jurisdiction over the matter after making its ruling related to the

---

[6] Even if the argument about the arbitrator's authority was not waived, Hamdorf's arguments on this point are not persuasive. The Arbitration Agreement very clearly delegates questions of arbitrability to the arbitrator. Doc. 3-4 at 4. The Stock Agreement does not address this delegation at all and only states that Hamdorf consents "exclusively to personal and subject matter jurisdiction in the state and federal courts of Minnesota." *See, e.g.*, Doc. 3-6 at 14. It does not mandate that United bring all disputes in those courts. And even to the extent Hamdorf argues that this calls into question the existence of the Arbitration Agreement, arbitrability issues still fall to the arbitrator unless the delegation clause is challenged specifically. *Rent-A-Ctr.*, 561 U.S. at 72.

>temporary restraining order and all determinations of final relief shall be decided in arbitration.

Doc. 3-4 at 4. Hamdorf argues "[t]his provision is subject to only one reasonable interpretation," namely "that claims for emergency, immediate, temporary injunctive relief <u>must</u> be brought in court." Doc. 2 at 14 (emphasis in original). He also argues that the AAA rules that were incorporated into the agreement do not permit interim relief. *Id.* at 13. The arbitrator rejected this argument because this language is permissive, not mandatory, and because both the Arbitration Agreement and relevant AAA rules permit the arbitrator to grant any remedy or relief that is available in court or authorized under applicable law. Doc. 3-8 at 4-6.[7]

The standard for vacating arbitration awards is very high. "A party seeking relief under this provision bears the heavy burden of demonstrating that the arbitrator's award simply reflects his own notions of economic justice rather than drawing its essence from the contract." *Goldgroup Res., Inc.*, 994 F.3d at 1190 (internal quotation and citation omitted). "As long as the arbitrator's decision is even arguably construing or applying the contract, it will not be overturned even where the arbitrator committed a serious error." *Id.* (internal quotation and citation omitted).

Hamdorf does not attempt to meet this very high standard. Nor does the Court see any reason why the arbitrator's decision was erroneous. The provision states that parties <u>may</u> seek interim relief in a court; it does not state that they <u>must only</u> do so. And both the Arbitration Agreement and the AAA rules permit arbitrators to issue a wide array of relief, including interim relief. The arbitrator did not exceed her authority. Hamdorf's motion to vacate is denied.

---

[7] Hamdorf made other arguments on this issue to the arbitrator. *See* Doc. 3-8 at 4-7. But in the motion to vacate, he only relies on the provision in the Arbitration Agreement and his interpretation of the AAA rules. Doc. 2 at 13-15.

**D.   United's request to confirm the interim arbitration award is denied without prejudice.**

United filed a cross-motion to confirm the interim arbitration award. Doc. 10. Specifically, United moves the Court to confirm the interim award granting injunctive relief, award attorneys' fees and costs, and enter judgment confirming the interim award. United's argument on this point is brief. Doc. 11 at 16; Doc. 21 at 5. Hamdorf disputes that United's request for attorneys' fees is appropriate but does not generally challenge the request to confirm the arbitration award (other than to the extent Hamdorf contends it should be vacated).

The Court denies United's cross-motion to confirm the interim arbitration award without prejudice. As suggested, the underlying award is an <u>interim</u> award. *See* Doc. 3-9. The award states that it only remains "in full force and effect until otherwise ordered by the Arbitrator or until such time as a Final Award is rendered in this arbitration." *Id.* at 39. Neither party addresses the circumstances under which an interim award can be confirmed,[8] nor do the parties provide any indication as to when or whether a final award will be issued.[9] Nor is there any meaningful support for United's request for attorneys' fees.

Accordingly, the Court will deny the motion to confirm without prejudice. By January 19, 2024, United may renew its motion. Any renewed motion should state the legal standard for confirmation of the underlying interim award and should specifically address the propriety of confirming an interim award in this particular case. To the extent any renewed motion includes a request for attorneys' fees or costs, that request should be both legally and factually supported.

---

[8] The Court does not suggest an interim award can never be confirmed. But neither party addresses whether it would be proper in this particular case given the nature of the award and the issues (if any) still left to be decided by the arbitrator.

[9] Hamdorf's brief states that "[a] final hearing in the arbitration proceeding was scheduled for November 6-8, 2023, but was informally postponed." Doc. 2 at 6. There is no indication as to when or if a final hearing was rescheduled.

12

Any brief in opposition should be limited to the propriety of confirming an interim award and <u>should not</u> rehash arguments for vacating the award.

If no motion is timely filed, or if any renewed motion does not adequately address these issues, the Court will administratively close this miscellaneous case.

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that Hamdorf's Motion to Vacate Interim Arbitration Award (Doc. 1) is DENIED.

THE COURT FURTHER ORDERS that United's Cross-Motion to Confirm Arbitration Award and Award Attorneys' Fees and Costs (Doc. 10) is DENIED WITHOUT PREJUDICE. United may renew its motion by **January 19, 2024**, as discussed above. If no motion is filed by that date, this miscellaneous case will be closed.

THE COURT FURTHER ORDERS that Defendants' Request for Expedited Argument (Doc. 22) is DENIED.

IT IS SO ORDERED.

Dated: January 4, 2024                    /s/ *Holly L. Teeter*
                                                  HOLLY L. TEETER
                                                  UNITED STATES DISTRICT JUDGE